UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00156-GNS

EMILY HODGE; and
GENESIS KENNEY                                                    PLAINTIFFS

v.

SPALDING UNIVERSITY, INC. et al.                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 7). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.       BACKGROUND

Plaintiffs Emily Hodge ("Hodge") and Genesis Kenney ("Kenney") (collectively, "Plaintiffs") are two former members of the women's volleyball team at Spalding University ("Spalding"). (Compl. ¶¶ 10-12, DN 1-2). Plaintiffs were both freshmen at Spalding during the 2022-2023 academic year. (Compl. ¶¶ 10-11). Hodge is currently a sophomore at Spalding but no longer plays on its volleyball team, as she was kicked off on August 23, 2023. (Compl. ¶¶ 9, 62). Kenney was kicked off the team in February 2023, and withdrew from Spalding in April 2023. (Compl. ¶¶ 38, 42).

Defendant Taryn Glass ("Glass"), a former assistant volleyball coach at Spalding, was hired as its head volleyball coach shortly before Plaintiffs began attending the university. (Compl. ¶ 13). Plaintiffs allege that they experienced bullying from teammates during their time on

Spalding's volleyball team, including being excluded from team-organized carpools to practices,[1] excluding Hodge from activities during a team trip to Maine, and talking behind Hodge's back "in the locker room and around the campus."  (Compl. ¶¶ 18, 22-24, 27).  Plaintiffs allege Glass fostered an environment that contributed to the teammates' bullying of them, including the "fail[ure] to take any action to stop the bullying" and "occasionally participat[ing] in the bullying" herself.  (Compl. ¶¶ 19-21).

After the trip to Maine, Plaintiffs assert Glass benched Hodge from playing "in retaliation for her complaints of bullying," telling Hodge she could work on "communicating better with her teammates off the court."  (Compl. ¶ 28).  After being benched from the volleyball team and receiving permission from Glass, Hodge joined Spalding's lacrosse team.  (Compl. ¶¶ 29-30).  Hodge later suffered a hip injury that was also allegedly exacerbated by workouts at volleyball practice led by Glass.  (Compl. ¶ 51).  Plaintiffs allege that Hodge's joining the lacrosse team and her subsequent hip injury enhanced the teammates' bullying.  (Compl. ¶ 32).

Plaintiffs allege that Kenney "spoke up against the disparate treatment" towards Hodge, and this resulted in both harassment from the team as well as Glass restricting Kenney's playing time.  (Compl. ¶ 35).  As a result, Kenney became severely depressed but was hesitant to complain to Glass because of Glass's treatment of Hodge.  (Compl. ¶ 36).  Plaintiffs' anxiety and depression triggered by the bullying caused both of their grades to suffer, with Kenney eventually being "kicked off the volleyball team for poor grades" in February 2023.  (Compl. ¶¶ 37-38).  After being

---

[1] Plaintiffs allege that the carpool system was created for safety purposes, as "team members would have to travel from the dorm rooms in downtown Louisville to the practice facility, traveling across a high crime downtown area during the extremely dark early morning hours."  (Compl. ¶ 22).  Plaintiffs allege that not only was their exclusion from the carpool system a function of bullying from their teammates and Glass, but also that making the players travel at night in downtown Louisville is an example of an "unsafe environment created by Spalding."  (Compl. ¶ 22).

dismissed from the team, Kenney "ultimately had to check into the Brook Hospital to address her mental health concerns." (Compl. ¶ 39).

Around July 2023, Hodge "was diagnosed with Attention Deficit Disorder ("ADD"), as well as with being on the Autism spectrum." (Compl. ¶ 45). Hodge alleges that she told Glass about this diagnosis "[o]n or about August 13, 2023" (i.e., the beginning of her sophomore year at Spalding). (Compl. ¶ 46). Shortly thereafter, "Glass told her she would be benched for the entire season so she could focus on her mental health." (Compl. ¶ 47). Ultimately, on August 23, 2023, Glass kicked Hodge off the volleyball team for allegedly starting rumors about her teammates and "not [being] a good fit for the team." (Compl. ¶ 57).

Plaintiffs further assert the other named defendants are also responsible for their alleged injuries resulting from bullying and disability discrimination. These Defendants include Victoria Murden McClure, the President of Spalding ("McClure"); Brian Clinard ("Clinard"), the Athletic Director of Spalding; and Lisa Bash-DeFrees ("Bash-DeFrees"), the "Associate Athletic Director and/or Senior Woman Administrator of Spalding" (collectively, "Defendants"). (Compl. ¶¶ 5-7). Plaintiffs allege each of these Defendants was aware of the bullying allegations and/or alleged disability discrimination and failed to act to remediate the situation, contributing to Plaintiffs' injuries. (Compl. ¶¶ 49-50, 52, 59). Lastly, Plaintiffs also assert that "Spalding University is vicariously liable for the tortious conduct of its employees and agents, under the legal doctrine of *respondeat superior*." (Compl. ¶ 73).

Plaintiffs bring the following claims: negligence (Count I) against all five defendants; negligent hiring and supervision (Count II) against Spalding, McClure, Clinard, and Bash-

DeFrees;[2] willful and wanton disregard for player safety and well-being (i.e., willful and wanton negligence)[3] (Count III) against all five defendants; intentional infliction of emotional distress ("IIED") (Count IV) against all five defendants; and negligent infliction of emotional distress ("NIED") (Count V) against all five defendants.  Hodge alone brings a claim for disability discrimination in violation of Title III of the Americans with Disabilities Act ("ADA") (Count VI) and retaliation in violation of Title III of the ADA (Count VII) against Spalding.  Plaintiffs also seek punitive damages (Count VIII).[4]  In the present motion, Defendants seek dismissal of all claims under Fed. R. Civ. P. 12(b)(6).  (Defs.' Mot. Dismiss, DN 7).

## II.    JURISDICTION

The Court has subject-matter jurisdiction under federal question jurisdiction.  28 U.S.C. § 1331.  Supplemental jurisdiction is exercised over the state law claims.  *See* 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint is subject to dismissal if it "fail[s] to

---

[2] In their Complaint, "Plaintiffs bring this claim against Defendants, Spaulding University, Murden McClure, Clinard, and Bash-DeFrees."  (Compl. ¶ 77).  Although the broad category of "Defendants" is named as part of Plaintiffs' list, it is assumed that Plaintiffs are not bringing a claim of negligent hiring and supervision against Glass, who is the subject of the alleged negligent hiring and supervision.  As such, Glass will not be considered as a named defendant for this claim.

[3] There is disagreement between the parties regarding whether this claim exists as an individual tort under Kentucky law.  (Defs.' Mem. Supp. Mot. Dismiss 7, DN 7-1; Pls.' Resp. Defs.' Mot. Dismiss 11, DN 10).  This discrepancy and the viability of the claim will be addressed in the analysis of this decision.

[4] As Defendants have stated, "punitive damages" is not a cause of action under Kentucky law. (Defs.' Mem. Supp. Mot. Dismiss 6); *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) ("[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action."  (citing *Toon v. City of Hopkinsville*, No. 5:09-CV-37, 2011 WL 1560590 (W.D. Ky. Apr. 14, 2011) (citation omitted)).  As such, Plaintiffs' requested remedy of punitive damages will only remain to the extent it is connected to another claim that survives dismissal.

4

state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the nonmoving party, but "the district court need not accept a bare assertion of legal conclusions."  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

### A.   Count I:  Negligence

#### 1.   *Whether a Claim for Negligence can Stand on its Own*

Parties disagree as to whether the negligence claim can remain concurrently with the other state law tort claims under the current facts.  (*See* Defs.' Mem. Supp. Mot. Dismiss 16; Pls.' Resp. Defs.' Mot. Dismiss 18).  Defendants contend that Plaintiffs' claim for negligence fails "because it is not separate or distinct from their IIED, NIED, or negligent hiring claims."  (Defs.' Mem.

Supp. Mot. Dismiss 16).  To support their position, Defendants rely on *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012), where the Kentucky Supreme Court stated that "a plaintiff cannot maintain *both* a negligence claim and an intentional infliction of emotional distress claim based on a single set of facts." *Id.* at 580.  Plaintiffs rebut this contention, by asserting that "a [p]laintiff can allege and maintain multiple forms of relief, including alternative claims that cannot be awarded alongside other claims; however, Plaintiff is ultimately limited in recovery to just one of the claims." (Pls.' Resp. Defs.' Mot. Dismiss 19).

It is true that multiple causes of action may be pled under the same set of facts at the motion to dismiss stage.  In *Childers*, the Kentucky Supreme Court explicitly stated that an IIED claim and a negligence claim "could be alternatively pleaded" even though "a litigant cannot prevail on both . . . on the same set of facts."  *Childers*, 367 S.W.3d at 581.  The notion that multiple claims on the same set of facts can concurrently survive a Fed. R. Civ. P. 12(b)(6) motion has been consistently upheld by this Court.  *See Snider v. City of Lyndon*, No. 3:23-CV-486-RGJ, 2024 WL 3165322, at *8 (W.D. Ky. June 25, 2024) ("Therefore, even if the same facts alleged in the Amended Complaint support both IIED and traditional tort claims, that is not grounds for [12(b)(6)] dismissal at this early stage of the litigation." (citing *Childers*, 367 S.W.3d at 581)); *see also Williams v. Burgess*, No. 5:21-cv-00099 (TBR), 2021 WL 5816830, at *5 (W.D. Ky. Dec. 7, 2021) ("[A]lthough IIED is not a 'gap-filler' tort, '[t]his is not to say that it cannot be pleaded alternatively.'  There can just 'be only one recovery on a given set of facts.'" (second alteration included in original) (internal citation omitted) (quoting *Childers*, 367 S.W.3d at 582)).

Therefore, Plaintiffs may alternatively plead negligent hiring and supervision, IIED, and NIED in addition to their negligence claim.  The Court analyzes the viability of each of these

claims below.  If multiple claims survive Defendants' motion to dismiss, Plaintiffs may only recover under one claim for the same set of facts.  *See Childers*, 367 S.W.3d at 580.

> ### 2. *Negligence Claim against Glass*

To assert a negligence claim under Kentucky law, Plaintiffs must allege:  "(1) [Defendants] owed a duty of care to [Plaintiffs], (2) breach of that duty, (3) injury to [Plaintiffs] and (4) legal causation between [Defendants'] breach and [Plaintiffs'] injury."  *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 673 (W.D. Ky. 2022) (quoting *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012)).

First, Plaintiffs have alleged that "Defendants had a duty to Plaintiffs in the circumstances to act with ordinary care toward Plaintiffs."  (Compl. ¶ 74).  Defendants argue that they "are without the ability, much less a legally cognizable duty, to ensure that Plaintiffs 'fit in' with their teammates." (Defs.' Reply Mot. Dismiss 4, DN 13).  Defendants further posit that "Coach Glass is not legally responsible for preventing this common freshman experience [of bullying]", which does not, however, address whether Glass owed a general duty to exercise reasonable care with respect to her players.  (Defs.' Reply Mot. Dismiss 4).  The Kentucky Supreme Court "has adopted a 'universal duty of care' which requires every person to exercise ordinary care in his activities to prevent foreseeable injury." *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006) (citing *Grayson Fraternal Ord. of Eagles No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)).  "Ordinary care is the same degree of care as a prudent person engaged in a similar or like business would exercise under the circumstances." *Id.*  The universal duty is not boundless, but consideration is given to "public policy, statutory and common law theories in order to determine whether a duty existed in a particular situation." *Id.* at 531 (internal quotation marks omitted).

Furthermore, "[i]t is well established that a breach of a voluntarily assumed duty can give rise to tort liability." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 847 (Ky. 2005) (citing *Louisville Cooperage Co. v. Lawrence*, 230 S.W.2d 103, 105 (1950)). "A threshold inquiry under this doctrine [of voluntarily assumed duty] is whether the putative tortfeasor has actually and specifically undertaken to render the services . . ." *Id.* (citations omitted). In this instance, Plaintiffs sufficiently allege facts establishing that Glass owed a duty to exercise reasonable care in her position as head volleyball coach. Glass voluntarily took the job as head coach for Spalding, "actually and specifically undertak[ing] [the role] to render services" to the team. (Compl. ¶¶ 13-14); *Louisville Cooperage Co.*, 230 S.W.2d at 105. Taking Plaintiffs' factual allegations as true, it is plausible that Glass's conduct caused "foreseeable injuries" in the form of failing to address their teammates' bullying. Therefore, Plaintiffs sufficiently alleged a duty of behalf of Glass.

Regarding breach, Plaintiffs assert that Defendants "failed in [their] duty by the manner in which they treated Plaintiffs." (Compl. ¶ 74). Although this statement itself is vague, Plaintiffs present several facts throughout the Complaint in which Glass's explicit actions and failure to act may have caused Plaintiffs harm. (Compl. ¶¶ 34, 47, 49, 54, 62-67). The issue at hand is whether these alleged actions by Glass plausibly constitute a breach of her duty to exercise ordinary care.

Plaintiffs contend that Glass, ignoring Hodge's request to keep her mental health issues confidential, told the volleyball team that Hodge "was taking a year off for mental health reasons." (Compl. ¶ 58). Glass's action allegedly caused former teammates to further bully Hodge on campus by spreading sexualized rumors about her, outwardly mocking the way she walked, and one incident in which a former teammate frightened Hodge by revving the engine of a car at a crosswalk. (Compl. ¶¶ 62-66). Further, Plaintiffs point to Glass's conduct relating to Hodge's hip

injury, which "slow[ed] her down during practice and competition," as evidence of Glass's negligence.  (Compl. ¶¶ 31-32).  Plaintiffs assert that Glass "would sometimes punish" Hodge's teammates because of Hodge's "inability to participate, making [the team] perform extra drills and sprints . . . ." (Compl. ¶ 33).   Despite Hodge's insistence to keep playing, Glass "was resolute in benching [] Hodge" so that "she would not have added stress due to her mental health issues." (Compl. ¶¶ 47-48).  Despite vocalizing her hip injury and being benched for the season due to mental health issues, Glass allegedly "forced [Hodge] to run sprints with the team" during practice. (Compl. ¶ 51).  Plaintiffs assert after Hodge approached Spalding's athletic directors regarding the alleged disability discrimination she experienced, Glass retaliated against Hodge by forcing her to complete her sprints, "further exacerbating her hip injury and causing severe emotional distress, humiliation, and embarrassment."  (Compl. ¶ 53).

From these facts, Plaintiffs have sufficiently alleged that Glass plausibly breached her duty. An individual breaches the duty to prevent foreseeable injury when that individual does not exercise the ordinary care of "same degree of care as a prudent person engaged in a similar or like business would exercise under the circumstances." *T & M Jewelry, Inc.*, 189 S.W.3d at 530.  Based upon Plaintiffs' allegations, Glass's spreading of Hodge's confidential, personal information and forcing Hodge to perform sprints despite her known hip injury plausibly breaches this duty of ordinary care.  (Compl. ¶¶ 33, 47-48, 53).  As such, Plaintiffs have successfully alleged breach on behalf of Glass.

Next, Plaintiffs allege they were injured in the following ways:  "[1] Hodge suffered physical injury and pain and suffering, [2] Kenney suffered loss of her scholarship and had to drop out of school, and [3] both Plaintiffs have suffered severe emotional and psychological pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and mental

anguish." (Compl. ¶ 75).  When deciding a motion to dismiss, a court must accept these facts as true, and Plaintiffs have plausibly alleged injury.

Lastly, Plaintiffs state that their injuries are "a direct and proximate result of Defendants' acts and omissions." (Compl. ¶ 75).  Although it is not clear that Kenney's loss of scholarship and attrition from Spalding is the result of Glass's alleged negligence, it is plausible that Hodge's emotional distress and exacerbated hip injury were the direct result of Glass's conduct.  To establish causation, Plaintiffs must ultimately prove that Glass's actions were both the "but-for" (i.e., cause in fact) and proximate cause of their injuries. *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016).  Under Kentucky law, "proximate cause [is determined] on the basis of whether the injury is a natural and probable consequence of the negligent act, which test involves the element of foreseeability." *Ohio Cas. Ins. Co. v. Commonwealth, Dep't of Highways*, 479 S.W.2d 603, 605 (Ky. 1972).  Here, Plaintiffs have plausibly alleged that, but for Glass's conduct, Hodge's teammates would not have been informed of Hodge's specific mental health issues which furthered their alleged bullying of her.  Moreover, Hodge's hip injury would not have been exacerbated in the manner as Plaintiffs assert but for Glass's mandated sprints regimen.  (Compl. ¶ 53).  It is plausible that Plaintiffs' injuries in these instances were foreseeable to Glass if she were exercising ordinary care.  Therefore, Plaintiffs have successfully pled a plausible claim for negligence against Glass, and Defendants' motion to dismiss Plaintiffs' negligence claim against Glass is denied.

### 3.    *Negligence Claim against the Remaining Defendants*

Defendants posit that the Complaint contains "no allegations that [] McClure, [] Clinard, or [] Bash-DeFrees interacted with [] Kenney in any fashion or took any affirmative actions toward [] Hodge." (Defs.' Reply Mot. Dismiss 2).  They assert that "accepting all allegations in the Complaint, these individual Defendants were not even on notice of any concerns until well after

Plaintiffs' freshman year." (Defs.' Reply Mot. Dismiss 2). Plaintiffs contend that McClure "was aware of the bullying issues and disability discrimination that was taking place within the volleyball team[,] yet she still failed and refused to take any action." (Compl. ¶ 59). They also allege that Clinard received an email from Hodge's mother "about [Hodge] being benched as a result of her ADD, autism, and anxiety diagnoses," and that the email "also mentioned the bullying and culture of the volleyball team." (Compl. ¶ 49). Lastly, Plaintiffs assert that Hodge "had a meeting with [] Clinard [and] Bash-DeFrees to discuss the disability discrimination and ongoing bullying she was experiencing," in which "Clinard [and] Bash-DeFrees defended [] Glass and indicated they were not going to take remedial action." (Compl. ¶ 52).

Accepting these allegations as true, they do not establish plausible negligence claims against these individual defendants. Unlike Glass, whose conduct Plaintiffs allege is specifically tied to their injuries, Plaintiffs do not explain how the other individuals breached a duty of ordinary care owed to Plaintiffs. Plaintiffs fail to establish how these individuals' mere knowledge of the bullying instances and failure to take action specifically contributed to their injuries. Therefore, the motion is granted as to the negligence claims against McClure, Clinard, and Bash-DeFrees. Because Spalding may retain liability for Glass's actions as an employee under the *respondeat superior* doctrine, the motion is denied as to negligence claim asserted against Spalding.

###### B.     Count II:  Negligent Hiring and Supervision

Plaintiffs contend that Glass was negligently hired and supervised by Spalding, McClure, Clinard, and Bash-DeFrees. (Compl. ¶ 77). To survive a motion to dismiss a claim for negligent hiring and supervision, Plaintiffs must allege "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck*

*Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998)).  Furthermore, to maintain a claim for negligent training and supervision, a plaintiff must allege "[1] that the defendant knew or had reason to know of the employee's harmful propensities; [2] that the employee injured the plaintiff; and [3] that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries." *Carroll v. Young*, No. 1:19-CV-00153-GNS-HBB, 2023 WL 6151233, at *9 (W.D. Ky. Sept. 20, 2023) (quoting *Grand Aerie Fraternal Ord. of Eagles*, 169 S.W.3d at 844; *Harrison v. Ellison*, No. 3:21-cv-174-RGJ, 2023 WL 4141050, at *18 (W.D. Ky. June 22, 2023)).  Plaintiffs have not met this burden.

Regarding negligent hiring, Plaintiffs have not pled sufficient facts to demonstrate that Glass was unfit for the job in which she was hired.  Plaintiffs assert that because Glass "is a young coach without any collegiate head coaching experience" and "had no training or expertise for her position," that "Defendants should have known that her placement in that job created an unreasonable risk."  (Compl. ¶ 14; Pls.' Resp. Defs.' Mot. Dismiss 18).  While Glass was the assistant coach of Spalding's volleyball team prior to her promotion as head coach, Plaintiffs have not alleged any facts suggesting Defendants knew of or had notice of Glass's poor or incompetent behavior.  Instead, Plaintiffs simply conclude that "Defendants knew or had reason to know of the [Glass's] harmful propensities."  (Pls.' Resp. Defs.' Mot. Dismiss 18).  Under the standard of a 12(b)(6) motion to dismiss, the Court does not consider "bare assertion[s] of legal conclusions." *Tackett*, 561 F.3d at 488.  There is nothing in the Complaint to suggest that Glass was unfit for her job, other than the allegations that she had never held a head coaching position before this one and was not "sufficiently train[ed] to deal with conditions, bullying, student-athletes with disabilities, or retaliation."  (Compl. ¶14).  Plaintiffs have failed to allege that these qualifications are

requirements for holding the head coaching position at Spalding.  Therefore, Plaintiff has failed to allege that Glass was negligently hired.

Regarding negligent training and supervision, Plaintiffs failed to allege that McClure, Clinard, and Bash-DeFrees were aware of Glass's alleged wrongdoing during the time it was taking place.  While Plaintiffs allege that "McClure was aware of the bullying issues and disability discrimination that was taking place within the volleyball team", the Complaint states that McClure was not involved until she corresponded via email with Hodge's mother on August 25, 2023.  (Compl. ¶¶ 59, 61).  This exchange occurred only after Hodge and Kenney were already removed from the team.  The timeline regarding Clinard's and Bash-DeFrees's involvement is similar:  Hodge met with Clinard and Bash-DeFrees on August 22, 2023, "to discuss the disability discrimination and ongoing bullying she was experiencing."  (Compl. ¶ 52).  This meeting took place one day before Hodge was removed from the team and after the alleged occurrences of bullying on behalf of Glass and the teammates. (Compl. ¶ 62).  Because Plaintiffs have not alleged that McClure, Clinard, and Bash-DeFrees were aware of Glass's actions during the time they claim the bullying took place, they have not sufficiently pled a claim for negligent training and supervision.  Therefore, Plaintiff's negligent hiring and supervision against McClure, Clinard, and Bash-DeFrees are dismissed.

### C.    Count III:  Willful and Wanton Disregard for Player Safety and Well-Being (Willful and Wanton Negligence)

The parties disagree as to whether Plaintiffs' claim for "willful and wanton" negligence is a recognized tort under Kentucky law.  (Defs.' Mem. Supp. Mot. Dismiss 7; Pls.' Resp. Defs.' Mot. Dismiss 11).  Plaintiffs rely on *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007), a breach of contract case where the Kentucky Supreme Court affirmed courts have "long upheld exculpatory clauses in arm's-length transactions between

sophisticated parties . . . and allowed such parties to bargain against liability for their own negligence and even gross negligence 'short of willfulness and wantonness.'" *Id.* at 655. Defendants assert that "[willful and wanton disregard] it is a standard relevant to an affirmative defense of a breach of contract lawsuit.  It is not a new cause of action." (Defs.' Mem. Supp. Mot. Dismiss 7).  Plaintiffs do not explicitly rebut Defendants' argument but rather insist that willful and wanton negligence is its own cause of action.  (Pls.' Resp. Defs.' Mot. Dismiss 11).

There is some support that "willful and wanton negligence" may be a cause of action under Kentucky law.  A footnote in *Cumberland Valley* cites *Donegan v. Beech Bend Raceway Park, Inc.*, 894 F.2d 205, 207 (6th Cir. 2007), distinguishes the types of negligence under Kentucky law:

> Like many states, Kentucky distinguishes ordinary from gross negligence, the former meaning the absence of ordinary care, *Lowe v. Commonwealth*, 298 Ky. 7, 11, 181 S.W.2d 409, 412 (1944), and the latter meaning the absence of slight care. *McTavish v. Chesapeake & O.R.R.*, 485 F.2d 510, 512 (6th Cir. 1973).  Kentucky defines willful or wanton negligence as "the entire absence of care for the life, person or property of others." *Louisville & N.R.R. v. George*, 279 Ky. 24, 29, 129 S.W.2d 986, 988-89 (1939).  Here there is an element of conscious disregard of the rights or safety of others, which deserves extra punishment in tort. *Id.*, 129 S.W.2d at 989.

*Donegan*, 894 F.2d at 207.  Kentucky law, in essence, may allow "extra punishment" (i.e., a higher award of damages) for negligent conduct that exemplifies "the entire absence of care for the life, person or property of others." *Louisville & Nashville R.R. Co. v. George*, 129 S.W.2d 986, 988-89 (Ky. 1939).

Even if this tort is recognized as a separate cause of action under Kentucky law, however, Plaintiffs have not met their burden of alleging a plausible claim.  In asserting this claim, Plaintiffs' main contention concerns "[t]he acts and omissions of Defendants" that resulted in "permanent damage to [Hodge's] hip," Hodge's "pain and suffering," Kenney's "loss of scholarship and [necessity] to drop out of school," and both Plaintiffs'

14

"severe emotional and psychological harm and suffering." (Compl. ¶¶ 88-90). These allegations are mere conclusions as to Plaintiffs' injuries and do not provide specific facts asserting an "entire absence of care for the life, person or property of others." *Louisville & Nashville R.R. Co.*, 129 S.W.2d at 988-89. Taking into consideration the facts alleged by Plaintiffs, nothing about Glass's conduct, nor the conduct of the other defendants, rise to this level. The Complaint indicates Glass clearly inquired about Hodge's well-being after Hodge informed of her emotional state on the Maine trip. (Compl. ¶ 26). Moreover, Glass initially recommended that Hodge refrain from participating in practice so that "she could focus on her mental health." (Compl. ¶ 47). Even if this behavior was negligent and did not comport with Plaintiffs' wishes, it does not establish an "entire absence of care" for Plaintiffs' "life, person, or property." Therefore, Defendants' motion is granted, and Plaintiff's willful and wanton negligence claims against all Defendants are dismissed.

### D.    Count IV:  IIED

#### 1.    *Whether a Claim for IIED is subsumed by the ADA Claims*

The parties disagree as to whether Plaintiffs' claims for discrimination and retaliation under the ADA subsume the claim for IIED. Defendants rely on *Gryzb v. Evans*, 700 S.W.2d 399 (Ky. 1985), in which the Kentucky Supreme Court held that a plaintiff cannot maintain a claim for wrongful termination when the Kentucky Civil Rights Act ("KCRA") provides a remedy for the same injury. *Id.* at 401. The Kentucky Supreme Court has stated that "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id.* (citations omitted). This Court has recognized the *Gryzb* holding preempts other common law claims, including IIED, whenever a state statute specifies a civil remedy available to a plaintiff for the same injury.

15

*Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 592-593 (W.D. Ky. 2004), *aff'd*, 123 F. App'x 699 (6th Cir. 2005).  Defendants argue that "the [ADA] provides the same protections, remedies, and relief as the KCRA, and thus, the same [*Gryzb*] preemption applies."  (Defs.' Mem. Supp. Mot. Dismiss 12, DN 7-1).

It is true that the *Gryzb* holding has been applied to other statutes, but Defendants cite no caselaw to support the assertion that the ADA, specifically, preempts an individual's state common law claims.  *See Breeden v. Exel, Inc.*, No. 3:21-CV-416-CHB, 2021 WL 5702422, at *3 (W.D. Ky. Dec. 1, 2021) (dismissing a wrongful termination claim as preempted under the Kentucky Occupational Safety and Health Act); *see also Jones v. Metal Mgmt. Nashville, LLC*, No. 1:08-CV-102-R, 2009 WL 197427, at *4 (W.D. Ky. Jan. 26, 2009) (dismissing a wrongful termination claim as preempted by the Surface Transportation Assistance Act) ("Because [the plaintiff's] claim rests on a federal regulation the violation of which specifies a civil remedy, [the plaintiff] cannot state a claim for wrongful discharge under Kentucky law.").  It may be true that the ADA can preempt an individual's state common law claim; however, the Court does not need to make this determination in the current case, as Plaintiffs' claim for IIED fails for the reasons stated below.

### 2.      *Claim against Glass*

To state a claim for IIED, Plaintiffs must plausibly allege that "[1] [t]he wrongdoer's conduct [was] intentional or reckless; [2] the conduct [was] outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there [was] a causal connection between the wrongdoer's conduct and the emotional distress; and [4] the distress suffered [was] severe."  *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000).  IIED "is not available for 'petty insults, unkind words and minor indignities.'"  *Id.* at 914 (quoting *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996)).  "Nor is [IIED available] to compensate for behavior

that is 'cold, callous and lacking sensitivity.'" *Id.* (quoting *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990)). "Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Id.* (citing *Kroger Co.*, 920 S.W.2d at 65, 67). Plaintiffs contend that "the direct acts and omissions of Defendants" constitute outrageous and intolerable conduct. (Pls.' Resp. Defs.' Mot. Dismiss 12). These acts and omissions "include[e], but [are] not limited to[:] failing to address teammates' bullying, participating in the bullying, retaliation for complaining, and the punishment workouts that Plaintiffs endured at the hands of Defendants." (Pls.' Resp. Defs.' Mot. Dismiss 12). The facts alleged in the Complaint do not rise to the degree of "offend[ing] against the generally accepted standards of decency and morality" reserved for an IIED claim. *Osborne*, 31 S.W.3d at 913. The Complaint does not specifically state which facts specifically support a claim of IIED, so the Court will look to those which resemble "intentional or reckless" conduct, rather than general negligence.

First, one alleged example of Glass participating in the bullying of Plaintiffs occurred when Kenney could not afford a phone due to her family's financial hardship. Plaintiffs allege that Glass "frequently harassed [Kenney], berated her, and told her if she could not afford a phone to get a job." (Compl. ¶ 21). It is not clear from this language that Glass intended to or acted recklessly in causing Kenney emotional harm, nor have Plaintiffs alleged sufficient facts that Kenney was severely distressed by these interactions. As the Kentucky Supreme Court has stated, comments which are "cold, callous, and lacking in sensitivity" do not rise to the IIED standard of conduct that is "beyond all decency." *Humana of Ky.*, 796 S.W.2d at 4.

Another example involves Glass accusing Hodge of "being suicidal or having thoughts of self-harm" during a meeting between the two after Hodge's teammates found her distressed in a hotel room during the team's trip to Maine. (Compl. ¶ 26). While in high school, Hodge was

17

diagnosed with and prescribed medication for anxiety. (Compl. ¶ 16). Glass and the former head coach, Cheneta Robinson, were made aware of Hodge's diagnosis prior to Hodge enrolling at Spalding. (Compl. ¶ 17). Plaintiffs allege that the experience of being bullied "triggered [Hodge's] anxiety." (Compl. ¶ 26). After Hodge confided in Glass regarding her anxiety, Glass allegedly "inform[ed] the entire team about [Hodge's] mental health issues," resulting in more bullying towards Hodge. (Compl. ¶ 34). Again, Glass may have acted in way that did not align with Plaintiffs' wishes in this instance, but the conduct does not rise to the requisite level. IIED goes beyond "petty insults, unkind words and minor indignities." *Kroger Co.*, 920 S.W.2d at 65. Inquiring about Hodge's mental state after she was found distressed in her hotel room and subsequently discussing Hodge's mental health issues with the team does not constitute outrageous conduct to support an IIED claim.

Lastly, Plaintiffs point to Glass's treatment of Hodge after her hip injury as an example of her alleged intentional misconduct (i.e., forcing Hodge to run sprints, "exacerbating her hip injury and causing severe emotional distress"). (Compl. ¶ 53). Accepting Plaintiffs' factual allegations true, their IIED claim fails in this instance as well. Although this behavior comes closer to the standard of outrageous conduct consistent with an IIED claim, it still falls short of exceeding "generally accepted standards of decency and morality . . . ." *Osborne*, 31 S.W.3d at 913. Plaintiffs have not alleged that Glass plausibly acted with intent or recklessness to inflict emotional harm. From the facts alleged, Glass ostensibly benched Hodge from playing out of concern for her mental health. Even if it is true that Glass "forced [Hodge] to run sprints with the team" during practice," this is not conduct atypical of a coach of any type of athletics. In fact, it appears Glass encouraged Hodge not to play, given the difficult time she was experiencing, and the sprints resulted from Hodge's insistence to participate. (Compl. ¶ 51). Based upon the facts alleged in

the Complaint, there are no allegations against Glass which plausibly rise to the degree of an IIED claim.  Therefore, Defendants' motion to dismiss the IIED claim against Glass is granted.

### 3.    *Claim against the Remaining Defendants*

Plaintiffs do not allege specific facts for how the remaining defendants would be liable to Plaintiffs under a theory of IIED.  Plaintiffs state that "it is plausible on its face that Defendants McClure, Clinard, and Bash-DeFrees' dismissal of Emily's complaints and complete failure to take any remedial action or perform and investigation also offends against the generally accepted standards of decency and morality." (Pls.' Resp. Defs.' Mot. Dismiss 14) (internal quotation marks omitted).  This conclusory assertion, however, does not comport with the standard to survive a motion to dismiss. *See Tackett*, 561 F.3d at 488.  Because Plaintiffs have not alleged specific facts demonstrating a plausible claim that McClure, Clinard, and Bash-DeFrees intentionally or recklessly engaged in outrageous conduct against Hodge or Kenney, Defendants' motion to dismiss the IIED claim against the remaining defendants is also granted.  Similarly, because there is no longer a viable claim for IIED against any of the individual defendants, the motion is granted as to the IIED claim asserted against Spaulding.

### E.    <u>Count V:  NIED</u>

### 1.    *Claim against Glass*

To successfully allege NIED, Plaintiffs are required to first state a plausible claim under "the traditional elements of a negligence action." *Garvin*, 616 F. Supp. 3d at 673 (quoting *Osborne*, 399 S.W.3d at 17).  If each of these elements is plausibly met, "recovery is limited to 'severe or serious emotional injury' which 'occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case.'" *Id.* (quoting *Osborne*, 399 S.W.3d at 17).  "Distress that does not significantly affect

the plaintiffs['] everyday life or require significant treatment will not suffice" for maintaining an NIED claim. *Osborne*, 399 S.W.3d at 17.

The Court has already determined that Plaintiffs have sufficiently pled a general negligence claim, so what remains is whether the severity of emotional harm allegedly experienced by Plaintiffs rises to the level of NIED. Here, Plaintiffs allege sufficient facts to demonstrate their emotional harm was severe enough to maintain an NIED claim against Glass. Plaintiffs contend that, as a result of Glass's negligence, Plaintiffs experienced "emotional distress, anxiety, embarrassment, humiliation, and mental anguish" from these teammates' bullying. (Compl. ¶ 90). Kenney "became severely depressed, her grades dropped, she dropped out of school, and she had to be checked into Brook Hospital to address her mental health breakdown." (Pls.' Resp. Defs.' Mot. Dismiss 15). Furthermore, Hodge "also suffered severe depression and her grades dropped . . . . Her emotional distress was exacerbated because of her anxiety diagnosis, and she has not been able to participate in important religious activities involving the Fellowship of Christian Athletes." (Pls.' Resp. Defs.' Mot. Dismiss 16).

For the purposes of surviving a motion to dismiss, these facts sufficiently state a claim of NIED, as the alleged injuries "significantly affect [Plaintiffs'] everyday life [and some] require significant treatment . . . ." *Osborne*, 399 S.W.3d at 17. Therefore, Defendants' motion to dismiss the NIED claim against Glass is denied.

### 2.    *Claim against the Remaining Defendants*

Because Defendants' motion to dismiss the negligence claim has been granted for Defendants McClure, Clinard, and Bash-DeFrees, it has been established that Plaintiffs have not alleged a plausible claim for negligence against these defendants. Because a valid negligence claim is required to sustain a claim for NIED, the NIED claim against these defendants must fail

as well. *See Garvin*, 616 F. Supp. 3d at 673.  Therefore, Defendants' motion to dismiss the NIED claim against McClure, Clinard, and Bash-DeFrees is granted.  Because Spalding may retain liability for Glass's actions as an employee under the *respondeat superior* doctrine, Defendants' motion to dismiss the NIED claim against Spalding is denied.

### F.   <u>Count VI:  Disability Discrimination under Title III of the ADA</u>

Hodge alone brings a claim for disability discrimination under Title III the ADA, claiming Spalding violated 28 C.F.R. §§ 36.201(a)[5] and 36.202(a).[6]  First, it is clear that the ADA applies to Spaulding.  Title III of the ADA expressly includes "postgraduate private school[s]" in its list of "private entities [that] are considered public accommodations for the purposes" of Title III.  42 U.S.C. § 12181(7)(J).

The parties disagree as to whether Hodge possesses a recognized disability under the ADA. The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA") to expand the definition of "disability."  *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 566 (6th Cir. 2009).  Disability is now defined to include an individual who has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(1).  For the "being regarded as having such impairment" requirement, the ADAAA states that an individual meets this requirement "if the individual

---

[5] 28 C.F.R. § 36.201(a) states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation."

[6] 28 C.F.R. § 36.202(a) states that "[a] public accommodation shall not subject an individual . . . on the basis of a disability . . . to a denial of the opportunity of the individual [] to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

establishes that he or she has been subjected to an action prohibited . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The ADAAA provides rules of construction for the courts to follow, stating that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

The relevant inquiry here is whether, when viewing the facts in a light most favorable to Hodge, she has stated a plausible claim that (1) she has a physical or mental impairment and (2) that this impairment substantially limits at least one major life activity. It is important to consider Plaintiffs' timeline of facts for this analysis, as this will determine when Spalding was aware of Hodge's alleged disabilities. Plaintiffs state that Hodge was "diagnosed with anxiety" while in high school and that Glass was made aware of this diagnosis and Hodge's relevant prescriptions "prior to signing her letter of intent and enrolling" at Spalding. (Compl. ¶¶ 16-17). The Complaint alleges that Hodge confided in Glass regarding her anxiety issues throughout her freshmen year on the volleyball team. (*See* Compl. ¶¶ 26, 34). "Around July 2023, after [] Hodge finished her freshman year at Spalding, she was diagnosed with [ADD] as well as with being on the Autism spectrum." (Compl. ¶ 45). She made Glass aware of this information "[o]n or about August 13, 2023." (Compl. ¶ 46). Plaintiffs contend that, "[t]he next day before practice, [] Glass called [] Hodge into her office . . . [and] told her she would be benched for the entire season so she could focus on her mental health." (Compl. ¶ 47). When Hodge inquired why she "could not play in games, [] Glass said it was so she would not have added stress due to her mental health issues." (Compl. ¶ 47). Glass allegedly maintained this decision even after Hodge protested and claimed she "wanted to play and did not need a break from volleyball." (Compl. ¶ 48). Defendant Clinard

was allegedly made aware of this occurrence on August 16, 2023, but he took no action.  (Compl. ¶ 49).

In this instance, Hodge has stated a plausible claim for ADA discrimination.  Hodge posits that her anxiety "did interfere with her major life activities as she was not able to socialize or easily communicate with the rest of the volleyball team which was a major factor in her bullying."  (Pls.' Resp. Defs.' Mot. Dismiss 20).  Hodge has sufficiently pled enough facts to demonstrate that her diagnosed anxiety, which was known by Glass, limited her ability to cope with her teammates' bullying, and the acts of Glass may have exacerbated these negative effects.  (*See* Compl. ¶ 58). Furthermore, taking Hodge's factual allegations as true, Glass's decision to bench Hodge from playing games was directly related to her mental health, despite Hodges assurances that she could still play.  (Compl. ¶ 48).  Glass's decision to not let Hodge play plausibly constitutes a "denial of [Hodge's] opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of [Spalding]" on the basis of her diagnosed anxiety.  28 C.F.R. § 36.202(a).  Because Glass acted in her official capacity as an employee of Spalding when making this determination, Hodge has sufficiently pled a plausible ADA discrimination claim against Spalding.  Therefore, Defendants' motion to dismiss the ADA disability discrimination claim is denied.

### G.   Count VII:  Retaliation under Title III of the ADA

Hodge also alleges that she experienced retaliation for her disability in violation of Title III of the ADA.  The ADA regulations state that "[n]o private or public entity shall discriminate against any individual . . . because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [ADA] . . . ."  28 C.F.R. § 36.206(a).  Hodge alleges that "[b]y encouraging and/or allowing the bullying of [] Hodge to

continue and by kicking [] Hodge off the volleyball team after she complained about being treated differently on the basis of her disabilities . . . [Spalding] discriminated against [] Hodge." (Compl. ¶ 117). Defendants counter that Hodge "never told [] Glass or any other Defendant[s] that the bullying was due to disability discrimination. Thus, even if [] Hodge believes that Coach Glass retaliated against her by 'benching' her for complaining about bullying, she was not engaging in protected activity." (Defs.' Mem. Supp. Mot. Dismiss 19).

The Complaint contains sufficient facts to support an ADA retaliation claim. Defendants' position misses the point of Hodge's retaliation claim: Plaintiff does not allege that she was kicked off the volleyball team because she was bullied, but rather, she contends her termination was due to her reactions to the bullying, including confiding in Glass about her mental diagnoses. (*See* Pls.' Resp. Defs.' Mot. Dismiss 21 ("[Hodge] asked why she could not play in games, and Coach Glass said it was so she would not have added stress due to her mental health issues. That is discrimination and retaliation for a protected disclosure." (internal citation omitted))). Plaintiffs' alleged timeline of events also support a plausible claim for retaliation. According to the facts presented, Hodge told Glass about her ADD and autism diagnoses on or about August 13, 2023, after which Glass told Hodge she would be benched for the entire season "so she could focus on her mental health." (Compl. ¶ 47). On August 16, 2023, Hodge and her mother "sought reasonable accommodations" and informed Clinard, Spalding's athletic director, that Hodge was being "benched as a result of her ADD, autism, and anxiety diagnoses." (Compl. ¶ 49; Pls.' Resp. Defs.' Mot. Dismiss 22). The following week, Glass "forced [Hodge] to run sprints with the team," despite her objections regarding her hip injury. (Compl. ¶ 51). Hodge does not allege that her hip injury is a disability; rather, she asserts that being forced to run sprints while injured was a retaliation for approaching Clinard. (Pls.' Resp. Defs.' Mot. Dismiss 22). Lastly, Hodge alleges

that she was kicked off the volleyball team the following day because she "was not a good fit for the team." (Compl. ¶ 57).  Glass, against Hodge's wishes, informed Hodge's teammates she was "taking a year off for mental health reasons." (Compl. ¶ 58).

For the purposes of a motion to dismiss, these allegations sufficiently support an ADA retaliation claim, as Hodge has stated a plausible case that she was forced to run sprints and ultimately kicked off the team for approaching Clinard about her alleged disability discrimination. Therefore, Defendants' motion to dismiss the retaliation claim is denied.

### H.   <u>Count VIII:  Punitive Damages</u>

Lastly, Plaintiffs bring a claim for punitive damages.  As Defendants have argued and Plaintiffs agree, punitive damages is not a separate cause of action, but rather a potential remedy. *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378-79 (W.D. Ky. 2012) (citing *Toon v. City of Hopkinsville*, No. 5:09-CV-37, 2011 WL 1560590, at *3 n.6 (W.D. Ky. April 14, 2011)) (citation omitted).  Although Plaintiffs posit that punitive damages "is often asserted as a separate count," they present no other caselaw to support that punitive damages claims are properly dismissed at the summary judgment phase.  *Id.* at 379.  As such, if Plaintiffs' request for punitive damages is an available remedy under their causes of action, it is more properly stated as requested relief and not a separate claim.

Plaintiffs have four remaining claims that have survived Defendants' motion to dismiss: (1) negligence against Glass and Spalding, (2) NIED against Glass and Spalding, (3) ADA discrimination against Spalding, and (4) ADA retaliation against Spalding.  Plaintiffs contend that Defendants' conduct rises to the level of "gross negligence," for which punitive damages are allowable under Kentucky law.  *See Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51-52 (Ky. 2003).  "In order to justify punitive damages[,] there must be first a finding of failure to exercise

reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).  While the allegations are insufficient to support the assertion Glass's conduct rose to the level of willful or wanton negligence, the extent to which Glass's conduct rises to the level of gross negligence remains a factual question.  At this stage, Plaintiffs have sufficiently alleged gross negligence as part of their negligence and NIED claims, for which a jury could award punitive damages at trial.

Furthermore, Plaintiffs seek monetary damages on their ADA disability and discrimination claims.  (*See* Compl. ¶ 3).  In general, monetary damages are not available in private actions brought under Title III of the ADA, as these damages are not delineated in its enforcement provision.  *See* 42 U.S.C. § 12188 (limiting remedies to injunctive relief and attorney's fees).  In fact, although a court may award "such other relief as the court considers to be appropriate, including monetary damages to persons," these damages must be "requested by the Attorney General" and expressly "do[] not include punitive damages."  *Id.* § 12188(b)(2)(B), (b)(4).  As such, Plaintiffs may not seek punitive damages under these claims.

Because punitive damages may be available for Plaintiffs' negligence and NIED claims if they can demonstrate gross negligence, the claim for punitive damages is converted from a cause of action to a requested remedy and survives Defendants' motion to dismiss.  Defendants' motion to dismiss the request for punitive damages is denied.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 7) is **GRANTED IN PART** and **DENIED IN PART**.  Count I (negligence) against Defendants McClure, Clinard, and Bash-DeFrees is **DISMISSED.**  Count II (negligent hiring and

supervision) against Defendants McClure, Clinard, Bash-DeFrees, and Spalding is **DISMISSED.** Count III (willful and wanton negligence) is **DISMISSED** in its entirety.   Count IV (IIED) is **DISMISSED** in its entirety.   Count V (NIED) against Defendants McClure, Clinard, and Bash-DeFrees is **DISMISSED.**   Count VIII (punitive damages) is **DISMISSED**, but Plaintiffs' request for punitive damages remains.   The following claims remain:  (1) Count I (negligence) against Defendants Glass and Spalding, (2) Count V (NIED) against Defendants Glass and Spalding, (3) Count VI (ADA discrimination) against Spalding, and (4) Count VII (ADA retaliation) against Spalding.

Greg N. Stivers, Chief Judge
United States District Court

November 7, 2024

cc:      counsel of record